# EXHIBIT "A"



**STAR** Mutual RRG

**Prepared by:**

FINO SERVICES LLC

6193 Hwy Blvd #205
Katy TX
77494-1145

Tel: (146) 977-8544

Email: accountservice@finocompany.com

Laura Betancur

Tel: (254) 274-6902

Fax: (254) 274-6902

**Client:**

FEDERICO AGUILAR VENEGAS

12877 S EAST AVE
FRESNO, CA, 93725-9540

Tel: (559) 940-0963

# COMMERCIAL AUTO DECLARATIONS

| | |
|---|---|
| **DOT Number** | 4310452 |
| **MC Number** | |
| **Underwritten by:** | Star Mutual RRG |
| **NAIC:** | 17024 |
| **Policy Number:** | 31802-2385F9-24 |
| **Effective Dates:** | 10/25/2024 - 10/25/2025 |
| **State:** | CA |
| **Longest Radius:** | 300 Miles |
| **Business Type:** | Individual |

IN RETURN FOR THE PAYMENT OF THIS PREMIUM, AND SUBJECT TO ALL TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

**SCHEDULE OF COVERAGES AND COVERED AUTO**
This policy provides only those coverages where a charge is shown in the premium column below. Each of these overages will apply only to scheduled vehicles operated by scheduled and approved operators in the scope of insured's business.

**Coverages:**

| Description | Limits and Deductibles |
|---|---|
| BI/PD | Limit $750,000.00<br>Sublimit Cleanup Cost, limit $10,000.00<br>Deductible $0.00 |

| | |
|---|---|
| **Total Quoted Premium:** | $8,018.89 |
| **Tax** | $231.75 |
| **Member Surplus Contribution** | $1,603.78 |
| **Total Quoted Cost for the Term:** | $9,854.42 |
| **Minimum Earned Premium** | 15.0% |
| **Minimum Earned Fee** | **Member Surplus Contribution** 58.0% |
| **Number of Covered Power Units:** | 1 |
| **Number of Covered Drivers:** | 1 |

## Scheduled Vehicles:

| No | Year | Make Model | VIN | Class GVWR | Garaging Zip Code | Radius |
|---|---|---|---|---|---|---|
| 1 | 2018 | RAM 2500 | 3C6UR5PL7JG273994 | Class 2H: 9,001 - 10,000 lb | 93725-9540 | 300 Miles |

## Excluded Vehicles:

No Excluded Vehicles

## Scheduled Trailers:

No Scheduled Trailers

## Scheduled Drivers:

| No | First Name | Last Name | DOB | State | License | Points | CDL Exp |
|---|---|---|---|---|---|---|---|
| 1 | FEDERICO | AGUILAR VENEGAS | 1/28/1994 | CA | F1529248 | 2 | 1/28/2028 |

## Excluded Drivers:

No Excluded Drivers

As of date: 10/25/2024

**POLICY HOLDER NOTICES:**

This Policy is issued by a Risk Retention Group. We may or may not be subject to all insurance laws and regulations of your state. This policy is not covered under State Insurance Insolvency and Guarantee Fund.

Coverage is provided for Continental US Only.

We strongly recommend you to review your Declaration Page, coverage form and endorsements carefully to verify that coverages, limits, deductibles and any other policy details are correct and meet your insurance needs.

Federal, state and local laws and/or regulations may require you to carry higher limits of liability insurance or different coverages, based on your business operations or vehicle type. It is your responsibility to comply with these laws. Please contact the state department of transportation, your employer, or the city and municipalities where you operate, or any other applicable authorities to determine if you're required to carry higher limits and/or coverages.

This policy is a manuscript policy that is not standard policy, please read this policy carefully.

Please note that your policy language may be changed at renewal. The policy sets forth, in detail, the rights and obligations of both you and your insurance company.

Any and all policy Changes must be submitted to our authorized insurance representative in writing at least 2 business days before the requested effective date.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated United States sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC.

Our retail agents are prohibited from charging any fees in excess of Premiums and Membership Contribution Fees stated in the declaration pages. Any deviation from this practice should be reported to our compliance team.

**You are required to notify us of all**
incidents, occurrences, events, losses or accidents which may result in a claim without any exceptions within 48 business hours of such occurrence at Toll Free 800-730-0373 or at StarClaims@gbgroupllc.com

**Warning:** Any person who knowingly and with the intent to defraud any Insurance Company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

# COMMERCIAL AUTO INSURANCE POLICY

This Commercial Auto Policy ("Policy") differs significantly from claims-made or occurrence-type policies offered by other insurance companies. It is a manuscript policy with very strict reporting requirements. Any application(s), discovery form(s), warranty form(s), and other forms completed by the Insured, in order to obtain coverage from the insurer, are a part of this Policy and constitute warranties of the Insured.

Coverage is provided only for covered Claims:

Which result from an Accident occurring during the Policy Period; and

In addition, coverage is strictly limited to those Autos and Drivers listed, approved, scheduled, and described in the Declaration pages and attached Endorsements to this policy. And at those locations listed and described in this Policy and Endorsements. Various other provisions of this Policy restrict and limit the coverage provided. Please read the Policy and all Endorsements carefully to determine your rights and duties and what is covered and what is not covered.

Claim Expenses and Legal Expenses will reduce the available Limit of Liability stated on the Declaration Page, but not below the statutory minimum coverage required by law.

Throughout the Policy and any Endorsements to the Policy, the words "you", "yours", "Insured", and Named insured refer to the Insured named on the Declaration Page, and any person or organization qualifying as an Insured under the Policy. The words "we", "us", "our", "Insurer" and "Company" refer to the insurance company providing this Policy.

Capitalized terms have specific meaning throughout the Policy as defined in the Declaration Section below.

The terms of this Policy are contractual and not merely recitals, and the Policy shall be construed as a whole, including all paragraphs, sections, conditions, provisions, exclusions, and Endorsements.

Coverage is provided only for Scheduled Autos operated by Scheduled and Approved Driver(s) in the scope of named insured's business only as its operations are described in the policy declaration pages, endorsements and applications.

## SECTION 1 LIABILITY
## INSURING AGREEMENT

1. Subject to all other terms and conditions of the Policy, we will pay on your behalf for those Damages that you are legally obligated to pay because of Bodily Injury and/or Property Damage to which this Policy applies caused by an Accident and resulting from the ownership, maintenance, or use of a covered Auto as identified in Section III or any Endorsement if:

a. The Accident occurs during the Policy Period stated on the Declaration Page;

b. The Accident occurs within the radius of operation set forth in the Declaration Pages and Endorsements, within the Continental United States of America only;

c. The vehicle at the time of the Accident is being operated in commercial business use, for the benefit of the named insured entity only; and

The date of an Accident is the date upon which an Accident that results in Bodily Injury **and**/or Property Damage occurs regardless of when the Bodily Injury **and**/or Property Damage is first discovered or first manifested or reported. Claims arising from Accidents occurring prior to the coverage date of the Policy are not covered regardless of when Damages are first manifested or discovered.

2. We have both the right and duty to provide for your defense with respect to a Claim covered by the Policy. We have the exclusive right to designate and appoint legal counsel to represent you and to otherwise control such defense. Notwithstanding anything and to the contrary, our duty to provide for such defense will immediately terminate:

a. When the applicable Limits of Liability of the Policy are exhausted by payment of Damages and/or Claim Expenses;

b. If the Insured fails to pay any Self-Insured Retention and/or DEDUCTIBLE obligation imposed by this Policy in a timely manner;

c. If the Application attached hereto and forming a part hereof, including any supplemental information related thereto, is discovered by us to contain any material misrepresentation of fact; or

d. If you violate any of the conditions as set forth in this Policy.

We have the sole right, but not the duty, under this Policy to settle those otherwise covered Claims for which the proposed amount to be paid as Damages does not exceed the applicable Limits of Liability. Any such settlement will be binding upon the Insured and will not require the Insured's prior consent or ratification. Payment of settlement funds or expenses by us shall not relieve you of your duty to make timely payment of any applicable Self-Insured Retention and/or DEDUCTIBLE.

3. We will pay with respect to any Claim we defend:

a. All Claim Expenses we incur; or

b. All costs of Suit pursuant or order of court after a verdict is entered against the Insured in the Suit; and

c. All interest on any judgment that accrues after entry of the judgment and before we pay, tender, or deposit with the court that part of the judgment that does not exceed our Limits of Liability.

d. We will not pay any punitive damages awarded against the insured entity.

Any of the above payments are part of and will reduce the Limit of Liability provided by this Policy.

**Coverage Extensions - Supplementary Payments**:

In addition to the State Minimum Limit of Insurance, we will pay for the "insured":

1. All expenses we incur.

2. Up to $2,000 for cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

3. The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

4. All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $150 a day because of time off from work.

5. All costs taxed against the "insured" in any "suit" against the "insured" we defend.

6. All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within applicable limit of insurance as shown on the Declarations page less defense and adjustment cost.

7. Cleanup, debris, and vehicle removal from scene of accident costs and/or expenses are capped to $10,000 per accident, unless otherwise stated in the declarations page. This coverage extension is secondary to all other coverages and policies available to the insured.

Vehicle removal does not include storage charges and storage fees. Towing is capped to the minimum necessary distance to remove the vehicle from the scene of the accident in order to prevent obstruction of the flow of traffic.

Coverage extension does not apply to private property belonging to the named insured, their drivers, subsidiaries, contractors, volunteers, and agents of any type.

**LIABILITY EXCLUSIONS**

**This Policy does not apply to:**

1. Any obligation of an Insured under workers compensation, disability benefits, or unemployment compensation law, or any similar law, or any law relating to any employer/employee benefits and contractor/subcontractor agreements, obligations and/or relationships.

2. Bodily Injury to:

a. An employee, team driver, unauthorized guest passenger, leased employee, volunteer, contractor, and subcontractor of an Insured arising out of and in the course of:

(1) Employment, volunteering, lease agreement, contract and/or temporary replacement by an Insured, or

(2) Performing duties related to the conduct of the Insured's business; or

b. The spouse, child, parent, brother, or sister of an employee, leased employee, volunteer, contractor, subcontractor and temporary substitute of an Insured as a consequence of Bodily Injury to such persons.

This Bodily Injury Exclusion applies:

c. Whether an Insured may be liable as an employer, contractor, subcontractor, or in any other capacity; and

d. To any obligation to share Damages with or repay someone else who must pay Damages because of the injury, including Damages awarded for contribution or indemnity suits.

e. To the insured(s) and any agent(s) of the insured who were injured by an employee of the insured and/or additional insured.

3. Bodily Injury and/or Property Damage:

a. Alleged by one insured against any other insured (if the Insured is an organization, this exclusion shall apply to any parent, subsidiary, or affiliated company of the Insured); or

b. Arising out of acts of the Insured or third-party general contractors, subcontractors, independent contractors, volunteers, or property owners of their employees involving Claims or Suits alleging negligent hiring of employees or subcontractors, failure to contract with subcontractors, negligent supervision, failure to maintain, failure to supervise or any liability relating to any independent contractor's service or failure to provide service.

4. Claims or Suits brought by:

a. One Insured or any of its successors, assigns, subsidiaries, present entities, agents, or affiliates against another insured or any of its successors, assigns, subsidiaries, parent entities, agents, or affiliates; or

b. Any division or department of any of the entities described in subparagraph a. of this section; or

c. Any officer, director, contractor, subcontractor, volunteer, agent or employee of any of the entities described in subparagraph a. of this section.

5. Claims related to or arising out of:

a. Employment policies or practices of an Insured including, but not limited to, discrimination, termination, discharge, or harassment; or

b. Employment benefit laws affecting an Insured; or

c. Employment of any person by the Insured in violation of the law as to age, or of any person under 24 years of age if there is no limiting legal age limit.

6. Claims related to or arising out of the actual, alleged, or threatened commission of any act relating to sexual activity

including, but not limited to, sexual abuse, molestation, or harassment. Claims arising out of or related to such sexual activity are excluded from coverage;

a. Whether or not caused or committed by or at the direction of the Insured, its employees, volunteers, patrons, patients, guests, or other persons lawfully or unlawfully on the insured's premises or who lawfully or unlawfully come in contact with the insured's patients, patrons, or employees, or guests;

b. Notwithstanding that a Claim may allege negligent hiring or entrustment, placement, training, or supervision, failure to provide adequate security or any other allegation of intentional, negligent, or reckless conduct which facilitated or permitted the sexual activity to occur; and

c. Whether or not any Bodily Injury or Property Damage sustained by any person as a result of such activity was expected or intended by the person who engaged in the activity.

7. Any claims related to or arising out of actual or alleged assault and/or battery, whether caused by or at the direction of the Insured, the insured's employees, contractors, subcontractors, volunteers, or patrons, or from any cause whatsoever. This Policy further excludes claims, accusations, or charges of negligent hiring, placement, training, or supervision regarding any actual or alleged assault and battery. No coverage is provided for Claims alleging negligent hiring or entrustment, training or supervision, failure to provide adequate security, or other allegations of intentional, negligent, or reckless conduct related to actual or alleged assault and/or battery.

8. Personal Injury.

9. Advertising Injury.

10. Bodily Injury or Property Damage for which an Insured is obligated to pay Damages by reason of the assumption of liability under any contract or agreement. This exclusion does not apply to liability for Damages:

a. Assumed in a contract or agreement specifically approved by the Insurer by endorsement to this Policy, provided the Bodily Injury or Property Damage occurs subsequent to execution of the contract or agreement; or

b. That the Insured would have in the absence of the contract or agreement.

11. Bodily Injury or Property Damage for which any Insured may be held liable by reason of:

a. Causing or contributing to the intoxication of any person; or

b. The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

c. The violation of any statute, ordinance, or regulation relating to the sale, gift, distribution, or use of alcoholic beverages or controlled substances.

12. Bodily Injury or Property Damage resulting from the handling of property:

a. Before it is moved from the place where it is accepted by the Insured for movement into or onto the covered Auto; or

b. After it is moved from the covered Auto to the place where it is finally delivered by the Insured;

c. Resulting from the movement of property by a mechanical device.

13. Bodily Injury or Property Damage arising out of the use of firearms or any other instrument used as a weapon by, on behalf of, or at the direction of any Insured and or any other natural person.

14. Bodily Injury or Property Damage arising out of the ownership, boarding, or use of any kind of animal, whether domesticated or not domesticated.

15. Bodily Injury or Property Damage arising out of the use, operation, or maintenance of a covered Auto by anyone other than an Insured as specified in Section III.

16. Bodily Injury or Property Damage directly or indirectly resulting from acts, treatments, services, lack of services, errors or omissions, or other actions provided by the Insured outside of the Policy Period regardless of when any injury manifests itself or is first discovered.

17. Coverage or indemnity for any Claim or Suit arising prior to, during and/or subsequent to the Policy Period, based directly or indirectly upon, and arising out of, or related to:

a. Asbestos, asbestos fibers, asbestiform talc, or any material and/or substance containing asbestos, asbestos fibers, or asbestiform talc or any asbestos related to Bodily Injury or Property Damage, or exposure to asbestos, asbestos fibers, asbestiform talc fibers, asbestiform talc in any form, and/or manifestation of any asbestos related to Bodily Injury, including but not limited to asbestos, mesothelioma, and/or bronchogenic carcinoma; or

b. Any alleged act, error, omission, or duty involving asbestos, asbestos fibers, asbestiform talc, or any material and/or substances containing, asbestos fibers, or asbestiform talc in any environment, building, or structure.

c. Any injuries arising due to transmittable diseases.

18. Any Claim related to, caused by, or arising from Pollution including, but not limited to:

a. Bodily Injury or Property Damage arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of Pollutants at anytime:

(1) At or from any premises, site, or location that is or was at anytime owned or occupied by, or rented, or loaned to any Insured: or

(2) At or from any premises, site, or location which is or was at anytime used by or for any insured or others for the

handling, storage, disposal, processing, or treatment of waste or Pollutants; or

(3) Which are or were at anytime transported, handled, stored, treated, disposed of, or processed as waste by or for any Insured or any person or organization for whom any Insured may be legally responsible; or

(4) At or from any premises, site, or location on which any Insured or any contractors, volunteers, or subcontractors working directly or indirectly on any Insured's behalf are performing operations:

(a) If the Pollutants are brought on or to the premises, site, or location in connection with such operations or work by such Insured, contractor, volunteers, or subcontractor; or

(b) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of Pollutants.

b. Any Loss, cost, or expense arising out of any:

(1) Request, demand, or other (including consent decrees, consent orders, or administrative procedures) that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of Pollutants; or

(2) Claim or Suit by or on behalf of a "governmental authority seeking recovery for testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of Pollutants.

This Pollution Exclusion applies to discharge, dispersal, seepage, migration, release, or escape, within a building or in the atmosphere, of Pollutants at or from any premises regardless of whether or not owned, rented, occupied, or controlled by an Insured.

19. Any Claim related to, caused by, or arising from Hazardous Materials including, but not limited to:

a. The handling, storage, disposal, processing, treatment, or releasing or exposure to Hazardous Materials.

b. Any Loss, cost, or expense arising out of any:

(1) Request, demand, or order (including consent decrees, consent orders, or administrative procedures) that any Insured or others test for, monitor, clean up, remove, contain, treat, or neutralize, or in any way respond to, or assess the effects of Hazardous Materials; or

(2) Claim or Suit by or behalf of a governmental authority seeking recovery for testing for, monitoring, cleaning up, removing, containing, treating, or neutralizing, or in any way responding to, or assessing the effects of Hazardous Materials.

This Hazardous Materials Exclusion applies to discharge, disposal, seepage, migration, release, or escape, within a building or in the atmosphere, of Hazardous Materials at or

from any premises regardless of whether or not owned, rented, occupied, or controlled by an Insured.

Clean up costs incurred by any Insured of any Hazardous Materials are not Property Damage under this Policy.

20. Bodily Injury or Property Damage arising out of the willful violation of a penal statute or ordinance.

21. Bodily Injury or Property Damage arising out of the acts of an insured's employee, leased employee, contractor, subcontractor, volunteers, or agent outside the scope of his or her employment or duties.

22. Bodily Injury or Property Damage expected or intended from the standpoint of any insured.

23. Bodily Injury or Property Damage which directly or indirectly is the result of an act, error, or omission which was performed by the insured prior to or after the Policy Period stated on the Declaration Page, regardless of the date the Bodily Injury or Property Damage was first discovered, first manifested, or reported.

24. Bodily Injury or Property Damage arising out of the rendering or failure to render professional services and/or first-aid or medical services

25. Any Claim for punitive or exemplary damages, fines, statutory penalties, or sanctions, whether imposed by law or otherwise, trebled or otherwise multiplied damages or any restitution of legal fees, costs, and expenses. Claims for or awards against any insured for punitive or exemplary damages, fines, statutory penalties, or sanctions, whether imposed by law or otherwise, trebled or otherwise multiplied damages or any multiplied portion of a compensatory award are not covered by the Policy regardless of whether they are demanded or awarded based upon the conduct of an Insured or upon the conduct of others for whose conduct the Insured may be deemed to be vicariously liable.

26. Any Claim seeking relief other than for monetary damages including, but not limited to, claims for injunctions, temporary restraining orders, or other equitable relief or requiring any Insured to take any actions other than the payment of compensatory monetary damages for Bodily Injury or Property Damage as defines herein.

27. Any Claim filed under:

a. The Racketeer influenced and Corrupt Organization Act; or

b. The Employee Retirement Income Security Act.

28. Any Claim related to, caused by, or arising from mold and/or fungi including, but not limited to:

a. Any sums that any Insured becomes legally obligated to pay as Damages because of Bodily Injury, Property Damage, Personal Injury, Advertising Injury, or Medical Payments directly or indirectly relating to the actual, potential, alleged, or threatened presence of mold, mildew, or fungi of any kind whatsoever, or any materials containing them at anytime; or

b. Any Loss, cost, or expense to:

(1) Any Insured or any other person or organization, that they may incur in testing for, monitoring, removing, treating, or in any way responding to the actual, potential, alleged, or threatened presence of mold, mildew, or fungi of any kind whatsoever, or any materials containing them, whether as a result of a request, demand, statutory, or regulated requirement or otherwise; or

(2) Any insured or any other person or organization, that they may incur in connection with any Claim or Suit on behalf of any governmental authority or any person or organization relating to the actual, potential, alleged, or threatened presence of mold, mildew, or fungi of any kind whatsoever, or any materials containing them.

The Company neither assumes nor has any duty and/or obligation to defend any Insured with respects to any Claim or Suit seeking any Damages related to or resulting from mold, mildew, or fungi.

29. Any Claim related to, caused by, or arising from war and terrorism including, but not limited to:

Any Loss, Damage, cost, or expense of whatsoever nature directly or indirectly caused by, resulting from, or in connection with any of the following regardless of any other cause or event contributing concurrently or in any other sequence to the Loss, including:

a. War, invasion, acts of foreign enemies, hostilities or warlike operations (whether war be declared or not) civil war, rebellion revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power; or

b. Any "act of terrorism"

For the purpose of this War and Terrorism Exclusion, an "act of terrorism" means an act including, but not limited to, the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s) or government(s), committed for political, religious, ideological, or similar purpose; including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This War and Terrorism Exclusion also excludes Loss, Damage, cost, or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing, or in any way related to acts anywhere in this was and terrorism section.

If the Company alleges that by reason of this War and Terrorism Exclusion, any Loss, Damage, cost, or expense is not covered by this Policy, the burden of proving the contrary shall be upon the insured.

In the event any portion of this War and Terrorism Exclusion is found to be invalid or unenforceable, the remainder shall remain in full force and effect. War and terrorism coverage through an Endorsement in compliance with the U.S.

Terrorism Risk Insurance Act of 2002 may be purchased for an additional premium.

30. Covered Autos while used in any professional and/or unprofessional or organized and/or unorganized racing or demolition contest or stunting activity, while practicing for such contest or activity, or while that covered Auto is being prepared for such a contest or activity.

31. Any Claim for any covered Auto that is being used by anyone under the influence of alcohol, other intoxicants, controlled substances, or narcotics, unless administered on the advice of a physician. If for any reason a court of competent jurisdiction determines this Policy provides liability for a covered Auto that is being used by anyone under the influence of alcohol, other intoxicants, controlled substances, or narcotics, then the insurer has the right to amend and reduce the liability limits on the insureds Declarations Page to the amount of the state minimum coverage for the state where the occurrence took place.

32. Any claims arising out of or due to liabilities incurred in the scope of Brokerage and/or Freight Forwarders activities or authority.

33. This policy does not cover claims that otherwise are covered under any other liability policy, including and not limited to Auto Liability and Non-Truck Liability (NTL) policies.

34. This policy does not cover otherwise insured vehicles and drivers while rented to, leased to or operated under another name, company, organization, entity, or authority.

35. Namely excluded drivers and/or unscheduled drivers are not entitled to First Party Benefits. Namely excluded drivers and/or unscheduled drivers are not entitled to Uninsured and Underinsured Motorist Coverage available under this policy. If for any reason a court of competent jurisdiction determines this Policy provides First Party Benefits, and/or Uninsured and Underinsured Motorist Coverage for a namely excluded and/or unscheduled driver, then the insurer has the right to amend and reduce the uninsured and underinsured limits, and First Party Benefit limits identified on the insureds Declaration Page to the amount of the state minimum coverage for the state where this policy was issued.

36. Uninsured and Underinsured Motorist coverage does not extend to otherwise scheduled and approved driver if the insured vehicle is not used in the scope of the named insured's business.

37. First Party Benefits and Uninsured and Underinsured Motorist coverage, do not apply when otherwise scheduled and approved drivers operate equipment other than the scheduled equipment listed on the policy.

38. Any Claim for any covered Auto that is being used by anyone under the influence of alcohol, other intoxicants, controlled substances, or narcotics, unless administered by the advice of a physician. If for any reason a court of competent jurisdiction determines this Policy provides liability coverage for a covered Auto that is being used by anyone under the

influence of alcohol, other intoxicants, controlled substances, or narcotics, then the insurer has the right to amend and reduce the Uninsured and Underinsured Motorist, medical and other first party coverages in the insureds Declaration Page to the amount of the state minimum coverage for the state where the policy was issued.

39. This policy does not provide coverage to an insured who is operating otherwise insured vehicle without a valid governmental authority to operate or whose authority to operate was revoked by a governmental agency at the time or prior to the occurrence.  If for any reason a court of competent jurisdiction determines that this policy provides liability coverage for a carrier whose authority was revoked at the time of the loss, then the insurer has the right to amend and reduce the liability limits on the insured's Declaration Page, to the amount of the state minimum coverage for the state where the occurrence took place.

40. A driver that is scheduled and otherwise covered on the policy, who does not hold a valid Commercial Driver License (CDL) for the appropriate class of vehicle, will be excluded from coverage if operating a vehicle that requires CDL licensure and/or applicable CDL endorsement as required by law.

41. This policy strictly excludes all coverage, including indemnity and defense of the named insured and additional insureds, for any losses, claims and/or demands while engaged in brokerage, double brokerage, freight forwarding and any/or other type of similar activities.

42. If multiple policies or coverages were purchased by an insured, the most we will pay is limited to the highest amount of coverage under a single policy subject to all policy provisions. Coverage provided by this policy is not stackable. This policy shall not be stacked with any other policy issued by this or other insurance company.

43. This policy specifically excludes coverage for oil tankers, gas and/or oil drillers, fracking operators, their service providers onsite and offsite, including and not limited to transporters, haulers, mechanics, and all other service providers, unless otherwise modified by endorsement and stated in the declaration pages.

44. Explosives

This insurance does not apply to:

"Bodily injury" or "property damage" caused by the explosion of explosives you make, sell or transport.

45. Wrong Delivery of Liquid Products

 This insurance does not apply to:

"Bodily injury" or "property damage" resulting from the delivery of any liquid into the wrong receptacle or to the wrong address, or from the delivery of one liquid for another, if the "bodily injury" or "property damage" occurs after delivery has been completed. Delivery is considered completed even if further service or maintenance work, or

correction, repair or replacement is required because of wrong delivery.

46. SILICA OR SILICA-RELATED DUST EXCLUSION
This insurance does not apply to:

1. "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

2. "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

3. Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any "insured" or by any other person or entity.

**Definitions:**

As used in this exclusion:

1. "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica

particles, silica dust or silica compounds.

2. "Silica-related dust" means a mixture or combination of silica and other dust or particles.

47. Nuclear Energy Liability Exclusion

The insurance does not apply:

A. Under any Liability Coverage, to "bodily injury" or "property damage":

(1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which

(a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof,

or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of

the operation of a "nuclear facility" by any person or organization.

C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

(1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured"

or (b) has been discharged or dispersed therefrom;

(2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

(3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion

(3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this exclusion:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or

organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or

plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any

time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises, or place prepared or used for the storage or disposal of "waste"; and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

48. Cyber Liability Exclusion

This insurance does not apply to any loss, cost, expense, fine, penalty, error and omission, or damage alleging, arising out of or from, attributable to, or giving rise to:

Any access to, collection or disclosure of, or failure to erase any person's or organization's confidential or personal information, including but not limited to patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information, biometrics, or any other type of nonpublic information; or

Business interruption or suspension of operations as caused by any access, unauthorized access, lack of access, delay in access, damage, manipulation, loss, or impairment to Electronic Data or Electronic Media; or

Cyber Extortion; A Privacy Breach; and Security Breach;

Any fraudulent communication through Electronic Media that impersonates any person or organization, including but not limited to phishing or other social engineering techniques or otherwise; or

Any computer code, software, or programming; or

Any Security Breach that results in any electronic thing or device or Electronic Media malfunctioning, improperly functioning, non-functioning, failing to perform as the intended user desired, or being electronically manipulated to perform in a way that causes harm to the insured or others; or

The loss, loss of use, misuse, delay, manipulation, corruption, damage, alteration, destruction, distortion, erasure, or theft of, or inability to access or manipulate Electronic Data or Electronic Media as a result of Cyber Extortion; or Privacy Breach; or Security Breach.

This exclusion applies even if damages are claimed for notification costs, errors or omissions, credit monitoring expenses, forensic expenses, public relations expenses, or any other loss, cost, or expense incurred by the insured or others arising out of that which is described above.

**Definitions:**

Computer hardware means the physical components of any computer system including CPU's, memory storage devices, storage media, and input/output devices and other peripheral devices and components including but not limited to cable, connectors, fiber optics, networking equipment, electronic data storage devices, input and output devices, backup facilities, wire, power supply units, keyboards, display monitors and audio speakers.

Computer system means an electronic, wireless, web or similar systems (including all computer hardware, computer programs and electronic data) used to process data or information in an analog, digital, electronic or wireless format, including but not limited to, associated input and output devices, data storage devices, networking equipment, wired or wireless peripherals, electronic backup facilities, and media libraries, that is owned or leased, operated and controlled by the insured, volunteer, agent or operated by an independent contractor authorized to provide Business Process Outsourcing services or outsourced Information Technology services for the insured.

Corporate Information Breach means the public disclosure of an organization's non-public information.

Cyber Extortion means any threat or connected series of threats communicated to the insured for the purpose of demanding money, securities, or property, including but not limited to threats to release, divulge, disseminate, corrupt, damage or destroy Electronic Data or Electronic Media; introduce malware or malicious code into the insured's computer system; electronically communicate with the insured's customers in order to fraudulently obtain personal information, money, securities or property; or restrict or hinder access to the insured's computer system, Electronic Data or Electronic Media, including but not limited to ransomware.

Denial of service means unauthorized or unexpected interference or malicious attack by any person(s) or entity(ies) that restricts or prevents access to a computer system by persons or entities authorized to gain access to the computer system or electronic data.

Electronic Data means information, facts, blockchain, crypto currencies, or computer programs stored as or on, created or used on, or transmitted to or from computer software, including but not limited to systems and applications software, hard or floppy disks, CD-ROMs, DVDs, external drives, USB sticks, tapes, drives, cells, microchip, data processing devices, or any other media which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of Electronic Data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve, or send data.

Electronic Media means broadcast or storage media that take advantage of electronic technology. They include television, radio, Internet, fax, Bluetooth, GPS, audio beacons, electronic data, and any other medium that requires electricity or digital encoding of information.

Malicious code means unauthorized and corrupting or harmful computer code, including but not limited to computer viruses, spyware, Trojan horses, worms, logic bombs, and mutations of any of the preceding.

Privacy Breach means a common law or statutory breach of confidence or violation of any common law or statutory rights to privacy, including but not limited to breach of a privacy policy, breach of a person's right of publicity, misappropriation of likeness, false light, intrusion upon a person's seclusion, or public disclosure of a person's or animal's private information. Privacy Breach will also include a Corporate Information Breach.

Security breach means:

Unauthorized access of the insured's computer system or unauthorized use of computer systems including unauthorized access or unauthorized use resulting from the theft of a password from the insured's computer system;

A denial of service attack against your computer systems; or

Infection of the insured's computer system by malicious code or transmission of malicious code from the insured's computer systems, whether any of the foregoing is a specifically targeted attack or a generally distributed attack.

Unauthorized access means the gaining of access to a computer system by an unauthorized person or persons.

Unauthorized use means the use of a computer system by an unauthorized person or persons or an authorized person in an unauthorized manner.

This Endorsement is an absolute exclusion for cyber liability, Electronic Data, Electronic Media and Security Breaches.

49.  Cross Suits Exclusion

This insurance does not apply to liability or damages of any kind arising from claims or "suits" brought by one "insured" against another "insured", whether such claims or "suits" are for direct damages, indemnification, contribution, or involve any other type of action.

**SECTION II PHYSICAL DAMAGE**

**INSURING AGREEMENT**

1. If the Insured requests Physical Damage coverage, and such coverage is listed on the Declaration Page and the associated premium paid for such coverage, subject to all other terms and conditions of the Policy, we will pay any Loss for Physical Damage to any Auto otherwise covered under this Policy.

a. Should an Accident causing Property Damage result from those specified activities or operations to which this Policy is limited; and

b. If such Accident occurs during the Policy Period (including any Policy Period extended by a specifically identified Retroactive Date) stated on the Declaration Page and within the Continental United States of America; and

c. If any Claim arising out of the Accident is made against you and reported to us in writing during the Policy Period.

2. If the Insured requests collision coverage, and such coverage is listed on the Declaration Page and the associated premium is paid for such coverage, we will cover Physical Damage:

a. Caused by fire, lightning, or explosion; theft; mischief or vandalism.

b. Caused by collision of a covered Auto with another object or the covered Auto's overturn.

3. Adequate Insurance – Coinsurance Penalty

We will not pay a greater share of any Loss than the proportion that the stated value of each Insured Auto described in any Endorsement bears to the actual value of the respective Auto at the time of Loss. Coverage of the Loss will be reduced, as a coinsurance penalty, by the same proportion that the stated value of the Auto involved in the Loss has to the full actual value of such Auto. Each item or Auto on the schedule is deemed to be separately insured. In order to avoid a coinsurance penalty in the event of a Claim, each Auto must be 100% insured to its respective actual cash value.

**Physical Damage Exclusions**

1. We will not cover any Claim or pay any Loss constituting, caused by, arising from, or related to:

a. Property Damage identified in any exclusion under Section 1. B. "Liability Exclusion" of this policy.

b. Wear and Tear, freezing, mechanical, or electrical breakdown; or

c. Blowouts, punctures, or other road damages to tires.

2. We will not cover Property Damage to:

a. tapes, records, discs, or other similar audio, visual or data electronic devices designed for the use with audio, visual, or data electronic devises;

b. Any device designed or used to detect speed-measuring equipment such as radar or laser detectors and jamming apparatus intended to elude or disrupt speed measurement equipment;

c. Any electronic equipment designed for the reproduction of sound, including, but not limited to radios and stereos, tape decks or compact disc players, or any other electronic equipment that receives or transmits audiovisual or data signals, including, but not limited to, citizen brand radios, television monitor receivers, telephones, video cassette recorders, audio cassette recorders, two-way mobile radios, scanning

monitor receivers, or personal computers, tapes, records, discs, or other media or accessories used with equipment previously described; or

d. Any accessories used with the electronic equipment described in subparagraph c. above

Exclusions under this Section 2 shall not apply to:

e. Equipment designated solely for the reproduction of sound and accessories used with such equipment, provided such equipment is permanently installed in the covered Auto at the time of the Loss, or such equipment is removable from a housing unit which is permanently installed in the covered Auto at the time of Loss, and such equipment is designated to be solely operated by use of the power from the Auto's electrical system, in or upon the covered Auto; or

f. Any other electronic equipment that is:

(1) Necessary for the normal operation of the covered Auto or the monitoring of the covered Auto's operating systems; or

(2) An integral part of the same unit housing any sound reproducing equipment described in a. above and permanently installed in the opening of the dash or console of the covered Auto normally used by the manufacturer for installation of a radio.

3. Any Physical Damage of Loss is excluded hereunder regardless of any other cause or event that may have concurrently contributed to such Physical Damage or Loss.

4. We will not cover any Claim or Loss to a covered Auto or equipment caused by or resulting from someone causing you to voluntarily part with the covered Auto by trick or scheme or under false pretenses; or you acquiring an auto from a seller who did not or does not have legal title.

5. We will not cover any Claim or Loss to a covered Auto or equipment due to or arising out of operations by an unlisted and/or namely excluded operator.

C. Limit of Liability

The most we will pay for a Loss in any one Accident is the lesser of:

1. The actual cash value of the damaged or stolen property as of the time of the Loss; and

2. The cost of repairing or replacing the damages or stolen property with other property of like kind and quality. Either payment method will be adjusted for depreciation and physical condition as of the time of the Loss.

D. DEDUCTIBLE

For each covered Auto, our obligation to pay for, repair, return, or replace damaged or stolen property will be reduced by any applicable DEDUCTIBLE shown on the Declaration Page.

**SECTION III WHO IS AN INSURED?**

An Insured is any person and/or entity expressly designated on the Declaration Page or in an Endorsement as an insured who is operating a covered Auto under this Policy. If the person or entity designated as an Insured is:

1. An individual, such individual, but only with respect to the conduct of commercial business operations for the benefit of the named insured and in the scope of the named insured's business operations as listed on the application and Declarations page of this policy.

2. A partnership, joint venture, limited liability company, or corporation, such legal entity, but only with respect to covered drivers and covered Autos conducting commercial business operations for and on behalf of such entity.

3. Any driver listed as an "approved driver" listed in Scheduled Driver Endorsement and which is in compliance with all other policy conditions and provisions, operating a covered Auto with the permission of the Named Insured and in the scope of named insured business.

**SECTION IV COVERED AUTO(S)**

Only those "autos" and "equipment" specifically listed, scheduled, approved, and specifically described on the policy are covered.

A. Covered Autos by Endorsement

The Covered Autos Limitation of Use Endorsement identifies the vehicles that are covered Autos under this Policy. Autos must be listed with an associated premium shown and paid for each Auto on the Endorsement, for coverage to be afforded for such Auto. All Changes must be submitted in writing at least 2 business days before the requested effective date. Changes will not take effect, unless a written confirmation (endorsement) was received from us.

B. Owned Autos You Acquire After the Policy Begins

An Auto you acquire after the Policy effective date will be a covered Auto under this Policy only if:

1. It replaces an Auto you previously owned that was a covered Auto under this Policy and, it meets the underwriting criteria, and you pay any required additional premium.

2. It is an additional Auto that you want to add to the Policy, and you pay any required additional premium within five calendar days of adding the Auto to the Policy.

3. If payment of any additional premium is not timely paid for additional vehicles, coverage will commence only from the date the additional premium is received by the Insurer, and the Insurer will not provide coverage from the date the vehicle was placed into service or the date the insurer was notified of the additional vehicle.

C. Certain Trailers and Mobile Equipment

The following types of vehicles are covered Autos for liability coverage:

1. Trailers primarily for travel on public roads while being towed by a coved Auto and operated by scheduled and approved driver; and

2. Mobile Equipment while being carried or towed by a covered Auto.

**SECTION V LIMITS OF LIABILITY**

A. The Limit of Liability shown on the Declaration Page and the conditions set forth below is the most we will pay regardless of the numbers of:

1. Insured's; or

2. Claims made, and/or Suits brought; or

3. Persons or organizations making Claims and/or bringing Suits.

B. Each Accident Limit of Liability listed on the Declaration Page is the most we will pay for any combination of Damages and/or Claim Expenses because of all Bodily Injury and Property Damage arising out of any one Accident. Claim Expenses reduce the available Limits of Liability but not below state or federal liability limits requirements applicable to the insured entity in the state of policy issuance.

C. This Policy is subject to any and all Sub-limits identified in this Policy, including any identified on the Declaration Page or on any included Endorsement.

D. All Claim settlement costs and Claim Expenses are included within the Limits of Liability shown on the Policy Declaration Page and are not in addition to such Limits of Liability. The Limits of Liability apply to the total sum which the Insured, or the insurer, become legally obligated to pay by reason of any Bodily Injury or Property Damage for which coverage is provided by the Policy, including any supplementary payment either through adjudication or compromise, any hospital, medical, or funeral charges, and any sum paid or payable as salaries, wages, compensation, fee charges, interest, or expenses of doctors, nurses, investigators, attorneys, and other persons relating to any settlement, adjustment, investigation, or defense of any Claim.

E. The following items affect our Limits of Liability as outlined:

1. A single Accident, or the accumulation of more than one Accident during the Policy Period, may cause the per Accident limit and/or the annual aggregate maximum limit to be exhausted at which time the Insured will have no further benefits under this Policy.

2. Upon the exhaustion of the Limits of Liability, the Insured may request the insurer to reinstate the original Limits of Liability for the remainder of the Policy Period for an additional coverage charge as may be calculated and offered by the Insurer on the Policy issued; although, the insurer has no obligation to accept the Insured's request; and

3. The insured understands and agrees that the insurer has no obligation under the coverage provided by the Policy to notify the insured of the possibility that the maximum coverage payable is or may be exhausted by any Accident or combination of Accidents that occur or may occur during the Policy Period. The insured, in his, her, or its sole discretion, must determine if additional coverage should be purchased, and the Insurer has no duty to make a determination or advise the Insured concerning additional coverage.

F. Notwithstanding anything contained in this Policy, and to the contrary, the Insurer's financial obligation imposed by the coverage with respect to all Claims, including any Claim Expenses and other related costs, incurred hereunder shall not exceed the amount specified on the Declaration Page as the aggregate Limit of Liability.

G. Amount payable under paragraph B, C, and D of this section above shall directly diminish the respective Limits of Liability as stated on the Declaration Page.

H. Our obligation to make any payments under this Policy shall only arise after the payment by the Insured of any DEDUCTIBLE amount as specified on the Declaration Page. The DEDUCTIBLE amount shall apply separately to each and every Claim and to each and every Insured. The insurer shall have no duty to make any payment for the defense or settlement of any Claim, or for the satisfaction of any judgment, until the insured has paid the DEDUCTIBLE. The Limits of Liability of this Policy include the amount of the DEDUCTIBLE and are not in excess thereof.

The Insured will pay 100% of the DEDUCTIBLE on each and every Claim for Damages and/or Claim Expenses before any payment is due pursuant to the terms of this Policy. The DEDUCTIBLE applies to each and every Claim regardless of whether a claimant presents multiple Claims. The following obligations and restrictions apply to the DEDUCTIBLE:

1. The insurer and/or its service providers, may assume control and defense of all Claims, Suits, and proceedings which, at its sole discretion, may involve this Policy. Such assumption of the control and defense of any Claim, Suit, or proceeding by the insurer, including the selection and/or appointment of defense counsel by the insurer, shall not affect the Insured's responsibility to pay the DEDUCTIBLE.

2. A separate DEDUCTIBLE shall be paid for each Claim. Multiple Claims arising from the same event and/or occurrence shall NOT be subject to multiple DEDUCTIBLES.

3. The insurer, at its sole discretion and without the consent of the insured, may agree to the payment of all or any part of the DEDUCTIBLE in satisfaction of Claim Expenses, settlements, Damages, or judgments.

4. The insurer, at its sole direction, may pay the amount of the DEDUCTIBLE from its own funds in satisfaction of Claim Expenses, Damages, settlements or judgments. In the event the insurer chooses to make such payment, the Insured shall reimburse the Insurer within 15 days of the mailing of a demand by the Insurer.

5. The Insurer, in its sole discretion, may direct the insured to pay all or any part of the DEDUCTIBLE to a third party in satisfaction of Claim Expenses incurred or Damages paid or of settlement or judgment amounts. The Insured shall make any required DEDUCTIBLE payment within 15 days of the Insurer's direction to make such payment.

6. In the event the Insured fails to reimburse the Insurer for any DEDUCTIBLE amount advanced by the Insurer and the Insurer incurs collection expenses, the Insurer shall be entitled to recover such collection expenses, including reasonable attorneys' fees and expenses, from the Insured to the extent permitted by law.

7. The Insurer has the right, but not the duty, to settle any covered Claim for which the proposed amount to be paid in Damages and Claim Expenses does not exceed the applicable Limits of Liability. Such settlements are binding on the Insured and do not require the Insured's prior consent or ratification.

a. Any settlement agreed to by the Insurer pursuant to its settlement rights shall be subject to cancellation by the Insurer if the Insured fails to pay the DEDUCTIBLE timely.

b. If any settlement agreed to by the insurer is not concluded due to the failure of the Insured to pay the DEDUCTIBLE for any reason, liability of the insurer for all Claims Expenses, Damages, and/or settlement and judgment amounts shall be limited to the amount for which the Claim could have been settled but for the Insured's failure to tender the DEDUCTIBLE.

8. This Policy shall not apply to any Claim first reported to the insurer while the Insured is in default in the payment of any DEDUCTIBLE due from the Insured.

9. Failure to timely pay the DEDUCTIBLE as required shall be considered to be the same as failure to pay premium when due, and the Insurer may, at its sole discretion, cancel the Policy for such nonpayment subject to the same notice requirements as set forth in the Policy for cancellation for non-payment of premium. Such cancellation shall not relieve the Insured of its duty to pay any DEDUCTIBLE, and the insurer may offset any return premium, due the Insured against any unpaid DEDUCTIBLE and take any other necessary steps to collect any unpaid DEDUCTIBLE.

I. Unscheduled Vehicles, Namely Excluded and/or Unscheduled Drivers, are specifically excluded from this policy and any coverages stated in the declaration pages. If for any reason a court of competent jurisdiction determines that this Policy provides coverage for an unscheduled vehicle or namely excluded and/or unscheduled driver, then the insurer has the right to amend and reduce such coverage to the amount of the state minimum coverage for the state where the occurrence took place.

Any costs incurred by the Company as a result of a claim(s) arising out of the operation of the insured vehicle by nonscheduled or excluded drivers, or unscheduled vehicle will be recovered from the named insured and/or owners and

shareholders of the named insured if it is a business entity or partnership.

## SECTION VI CONDITIONS

Notice of Accident, Potential Claim, Claim or Suit

1. As an express condition precedent to coverage under this Policy, you must give us written notice, as soon as possible and in no event later than 2 business days of any incident, event, occurrence, loss, or accident which might give rise to a claim covered by this policy.

a. How, when, and where the incident, event, occurrence, loss or accident took place;

b. The names and addresses of any injured persons and witnesses; and

c. The nature and location of any injury or damage arising out of the Accident.

d. Disclose if police investigated the accident and if any citations and/or reports were issued.

e. Any additional information you have available.

2. You and any other involved Insured must:

a. Immediately or at the earliest practicable moment, and in no event later than 2 business days after receipt by you, send us copies of any demands, notices; summonses, or legal papers received in connection with any Claim or Suit and act in all diligence and prudence to resolve the Claim or Suit; provided, however, that no settlement in excess of any applicable DEDUCTIBLE will be agreed to by the Insured without the Insurers' express written consent;

b. Authorize us to obtain records and other information;

c. Cooperate with us in the investigation, settlement, or defense of the Claim or Suit. The Insurer may require that the Insured submit to an examination under oath and/or questioning, attend hearings, depositions, and trials-additionally, in the course of investigation or defense, the Insurer may require written and/or sworn statements concerning the Claims; and

d. Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the Insured, or which provides similar benefits to the Insured, because of injury or damage to which this Policy may also apply.

3. No insured will, except at his own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our prior consent in excess of any applicable DEDUCTIBLE without prior written consent of the Insurer.

4. You must also do the following:

a. Promptly notify the police if the covered Auto or any of its equipment is stolen;

b. Take all reasonable steps to protect the covered Auto from further damage and keep a record of your expenses;

c. As often as may be reasonably required, permit us to inspect the covered Auto and records proving the Loss before its repair or disposition; and

B. Legal Action Against Us

No person or organization has a right under this Policy to:

1. Join the Insurer as a party or otherwise bring them into a Suit asking for Damages from an Insured; or

2. Sue the Insurer under this Policy unless all the terms of the Policy have been fully complied with by the Insured.

A person or organization may sue the Insurer to recover on an Agreed Settlement or a final judgment obtained after an actual trial against an Insured, but the Insurer will not be liable for Damages that are not payable under the terms of this Policy or that are in excess of the applicable Limits of Liability available to an Insured.

C. Other Insurance

1. If other valid and collectible insurance, whether primary, excess, contingent, or available in any other basis, including any form of self-insurance or self-insured retention is available to an insured for a Loss covered under this Policy, then:

a. This Coverage is excess over the other insurance, including any form of self-insurance, or self-insured retention; and

b. We will have no duty to defend any Claim or Suit that any other insurer has a duty to defend. If no other insurer or issuer of a form of self-insurance or self-insured retention defends, we may undertake to do so, but will then be entitled to enforce the insured's rights against those other insurers, self-insurers, or self-insured entity for defense costs, contribution, or indemnity.

2. When both this Policy and other insurance, whether primary, excess, or contingent or available on any other basis, including any form of self-insurance or self-insured retention, apply to the Loss on the same basis, we will not be liable under this Policy for a greater proportion of the Loss than that stated in the applicable contribution provision below:

a. If all such other insurance provides for contribution by equal shares, we shall not be liable for a greater proportion of such Loss than that which would be payable if each Insurer or self-insured entity contributes an equal share until the share of each insurer or self-insured entity equals the lowest applicable Limits of Liability under any policy or the full amount of the Loss is paid. With respect to any amount of the Loss not so paid, each remaining insurer or self-insured entity will then contribute an equal share of the remaining amount of the Loss until each such insurer has paid its limit in full or the full amount of the Loss is paid.

If all such other insurance does not provide for contribution by equal shares, the Insurer shall not be liable for a greater

proportion of such Loss than the applicable Limits of Liability under this Policy bears to the total applicable Limits of Liability of all other valid and collectible insurance applicable to such Loss.

3. If this Policy and any other policy or coverage contract issued to you by us or any company affiliated with us apply to the same Accident, the aggregate maximum Limit of Liability or any applicable Sub-limits under all of the policies and coverage contracts shall not exceed the highest applicable Limit of Liability or Sub-limit under any one policy or coverage contract. This condition does not apply to any policy or coverage contract issued by us, or an affiliated company, specifically to apply as excess insurance over this Policy.

D. Premium

1. We will compute the premium for this Policy in accordance with our rules and rates at the time coverage is issued or renewed on behalf of the Insured.

2. The premium shown on this Policy as the advance premiums are minimum-earned and deposit premiums only. At the close of each period, we will compute the earned premium for the Policy Period shown on the Declaration Page. Audit premiums are due and payable on notice to the Insured. If the sum of the advance and audit premiums paid for the Policy Period is greater than the earned premium, any prepaid premium charges become fully earned premium for the Policy Period.

The Insured must keep records of the information we need for coverage charge computation and send us copies at such times as we may request them.

3. In the event of a Claim, the minimum, fully earned premium for the Policy will be, at the insurer's discretion, earned up to 100% of the total premium stated on the declaration pages, and such minimum, fully earned premium will replace any other minimum-earned premiums charged and will not be subject to short-rate or pro-rata adjustment.

4. All Deductibles stated in the declaration pages, are the responsibility of the named insured. Should there be an occurrence where insurer makes a payment inclusive of the DEDUCTIBLE, the DEDUCTIBLE becomes payable to the insurer immediately upon written notice to the insured. Should the insured fail to make a voluntary payment or set up a repayment plan with the insurer within two weeks of the notice, then, the insurer will account unpaid DEDUCTIBLE as premium due. Insurer will automatically apply DEDUCTIBLE amount(s) to the premium payment schedule under the policy.

E. Insured's Representation

By accepting this Policy, you agree that:

1. The statements on the Declaration Page, attached Application, and any supplemental applications for insurance are accurate and complete representations made by you to us;

2. We have issued this Policy in reliance upon the submitted Application and any supplemental information provided by you; and

3. You are subject to all the Policy provisions.

F. Transfer of Rights of Recovery Against Others To Us

If an Insured has rights to recover all or a part of any payment for Damages or Claim Expenses we have made under this Policy from any person or organization, those rights are hereby transferred to the Insurer. The insured must do nothing after the Loss to impair these rights. At our request, the insured will bring Suit or transfer those rights to us, and will do all things we request to assist us to enforce those rights and collect payments made under the Policy.

G. Non-Assignable

The interest of the Insured under this Policy cannot be assigned without the prior written consent of the insurer.

H. Cancellation and Non-Renewal

1. The insured shown on the Declaration Page may cancel this Policy by mailing a request to cancel to the Insurer. No prior notice to the Policy's regular coverage ending date is required.

2. The insurer may cancel this Policy by sending via first class mail and/or email or by hand delivery to the Insured a written notice of cancellation at least:

a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium or upon your failure to pay any DEDUCTIBLE premium or any other cost or fee required to be paid under the terms of this Policy; or

b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. The insurer will send or deliver any notice of cancellation or any other notice to be delivered under the Policy to the Insured's mailing address shown on the Declaration Page or to Insured's mailing address shown on any written Endorsement changing insured's address shown on the Declaration Page and or email address used for the insurance application and servicing of the policy or both.

4. Notice of cancellation will state the effective date of cancellation and the Policy Period will end on that date.

5. If this Policy is cancelled by the insured or insurer, the premium for the period from the date of cancellation of the expiration date will be refunded at the greater of 15% of the total Policy premium and the short rate, all of which will be deemed the minimum, fully earned premium for the cancelled Policy. The total premium will be deemed the minimum, fully earned premium in the event a Claim is made at any time on the Policy prior to cancellation. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, a prepaid proof of mailing is sufficient proof of notice to the Insured. Notice deposited in the mail in the manner described above shall be effective when so deposited.

7. If the insurer offers a renewal, and payment and/or necessary forms and applications are not received by the

renewal date or within the grace period (5 business days post the renewal date), policy will lapse without any further notice.

8. At no time will cancellation of this Policy for any reason require the Insurer to refund an amount of premium over or above the minimum, fully earned premium set out in this Policy.

I. Changes

This Policy, including any Endorsements, contains all of the agreements between the insured and the insurer concerning the insurance provided by the Policy. The coverage terms can be amended or waived only by Endorsement issued by us and made a part of the Policy. Endorsements adding additional Insureds, coverage, or otherwise materially changing the Policy will require additional premium to be collected from the Insured before the Endorsement will become effective. Additional premium associated with any Endorsement will be calculated by the Insurer based upon its current rates at the time of the endorsement; although, no specific rate is guaranteed to the Insured. Notice to any agent, broker, or service provider, or knowledge possessed by any agent, broker, service provider, or by any other person, shall not effect, waive, or change any part of the coverage provided to the Insured under the Policy, or limit the Insurer from asserting any right under the terms of the Policy.

J. Examinations, Inspections, and Surveys

The Insurer has the right, but is not obligated to:

1. Examine and audit the insured's books and records as they relate to this Policy at anytime during the Policy period and up to three years thereafter;

2. Make inspections and surveys of the insured and its operations, premises, equipment, property, and books at anytime;

3. Prepare reports on the results of the inspections and surveys, and provide copies of said reports to the Insured; and

4. Recommend and/or require changes, repairs, or other acts to be completed as a condition precedent to continued coverage under the Policy.

We do not make safety inspections, undertake to provide legal advice or opinions, or perform the duty of any person or organization that provides for the health or safety of workers or the public. We do not warrant that conditions of the insured's premises or other working environment under the insured's control are safe or healthy, or comply with any or all federal, state, county, or local laws, regulations, codes, or standards. This limitation of our service applies not only to us, but also to any rating, advisory rating service, or similar organization or individual that may provide insurance inspections, surveys, reports, or recommendations at the request of the Insurer.

We, the insurance company, our agents, employees, or service contractors, are not liable for damages from injury, death or loss occurring as a result of any act or omission in the furnishing of or the failure to furnish insurance inspection services related to, in connection with or incidental to the issuance or renewal of a policy of property and/or casualty insurance.

K. Appraisal for Physical Damage Loss

If the Insured and the Insurer disagree on the value of an Auto or the amount of Loss, either may make written demand for an appraisal of the value of the Auto or the amount of Loss, in this event of an appraisal request each party shall select an independent, competent, and impartial appraiser (who can be the person initially retained to adjust the Loss)

The two appraisers will select an umpire. If they cannot agree on an umpire, either may request that a judge of a court having jurisdiction over this matter, make the selection. The appraisers will determine separately the value of the Auto or the amount of Loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of Loss. If they fail to agree, they will submit their differences to the umpire who will make a binding decision. Each party will pay its chosen appraiser and bear the other expenses of the appraisal and umpire equally.

L. Loss Payment – Physical Damage Coverages

At our option, we may:

1. pay for, repair, or replace damaged or stolen property;

2. Return the stolen property, at our expense, and pay for any damages that results to the Auto from the theft; or

3. Take possession of whole or any part of the damaged or stolen property at an agreed or appraised value.

4. Payment for loss will be made to the Named Insured and/or Loss Payee, at our option, payment may be made to both jointly or either separately.

5. Maximum payout is limited to the stated value reduced by the applicable DEDUCTIBLE. Or if selected Actual Cash Value less applicable DEDUCTIBLE, as stated in the declaration page.

6. If a repair or replacement results in betterment, we will not pay for the amount of betterment. In addition to our payment of the loss, necessary and reasonable towing and storage will be paid to protect the auto from further damage. Covered storage costs are not to exceed three days of storage charges incurred prior to the date you report the loss to us.

7. Any payments for mitigating further damages to the property incurred by the Company, reduces the applicable stated value.

8. Any expenses for clearing public or private roadway and/or property, including associated cleanup costs and fees are subject to a $10,000 sub-limit per occurrence, unless otherwise stated in the declarations page. Towing and storage of the insured vehicles, including trailers and cargo are not covered, and excluded under liability portion of this policy, unless otherwise stated in the declarations pages.

9. Protection under this clause does not apply in any case of:

a) fraud;
b) misrepresentation, either in the application process, or in the presentation of the claim;
c) material omission;
d) conversion; embezzlement;
f) secretion; or
g) willful damaging or destruction of your auto; committed by or at the direction of you or a relative, employee, contractor, subcontractor, volunteer and or any agent of the named insured.

M. Ultimate Net Loss

All claims settlement costs, defense costs, and related costs ("Claim Expenses") are included expenses within the maximum Aggregate Limit of Liability shown on the Insured's Declarations Page, and not in addition to such maximum Aggregate Limit of Liability. However, in no event shall Claim Expenses reduce the Limit of Liability shown on the Insured's Declarations Page to a sum less than the statutory minimum limits required by law. The maximum Aggregate Limit of Liability applies to a total sum for which the Insured, or the insurer, become legally obligated to pay by reason of any injury or damage for which coverage is provided by the Policy, including any supplementary payment either through adjudication or compromise, and shall also include any hospital, medical, or funeral charges, and sums paid or payable as salaries, wages, compensation, fee charges interest, or expenses for doctors, nurses, investigators, attorneys, and other persons, relating to any settlement, adjustment, investigation, or defenses of any Claim. Claim Expenses shall not include any charges for the Insurer's personnel salary or any part of the normal operating overhead of the Insurer.

N. Concealment, Misrepresentation, or Fraud

This Policy is void in the case of fraud by you at anytime as it relates to this Policy, and is also void if you or any other Insured at anytime intentionally conceal or misrepresent a material fact concerning this Policy, a covered Auto, your interest in a covered Auto, or a Claim under this Policy.

O. No Benefit to Bailee – Physical Damage Coverage

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing, or transporting property for a fee regardless of any other provision of this Policy.

P. Premium Audit

The initial premium for this Policy represents a minimum estimated premium based upon the exposures you told us you would have when you requested coverage. We expressly retain the right to conduct a premium audit of your records at anytime to determine if the exposures are ultimately greater than you told us. This premium audit may take the form of a request of you to provide proof of exposures by completing a self-audit form and supplying any type of supporting business records (such as proving gross receipts) or an audit conducted by our agent by physically inspecting your books and records.

In the event you fail to comply with any premium audit request, including failure to provide any requested information, you authorize us to assume additional exposures and charge and collect from you the greater of an additional premium equal to 25% of the original premium or the actual amount due based upon any premium audit findings. You also expressly agree to pay any costs associated with our efforts to collect any additional premium due from you. Under no circumstances will the minimum estimated premium be reduced as the result of any premium audit – the original premium represents a minimum premium for the Policy.

Q. Replacement – Parts

The insurer, in its sole discretion, has the right and privilege to use non-OEM replacement parts for the repair or replacement of any covered Auto in lieu of parts manufactured by the vehicle's original equipment manufacturer.

R. Policy Period, Coverage Territory
Under this Coverage Form, we cover "accidents" and "losses" occurring:
a. During the policy period shown in the Declarations; and
b. Within the coverage territory.
The coverage territory, if selected, is within the radius of operations from the home territory as specified in the Declaration Page, or Continental United States of America;

(2) The "insurer's" responsibility to pay damages that are determined in a "suit" on the merits, in the United States of America, in a settlement we agree to and not to exceed policy limits as stated in the declaration page, any excess verdicts are the insured's responsibility.

S. Scheduled Driver(s)
Scheduled driver(s) must be submitted to the insurance company in writing and approved by the insurance company via an applicable endorsement prior to operating an insured vehicle(s). Scheduled driver shall hold a valid driver's license, with appropriate endorsement, required for the class of vehicle operated as required by law.

T. Uninsured and Underinsured Motorist Coverage (UM/UIM)
Occupants and operators of your vehicle irrespective of classification (employees, contractors, subcontractors, leased employees, volunteers, etc..) are not named insureds under this policy. This means that they may not be eligible to collect Uninsured/Underinsured Motorist (UM/UIM) benefits up to the UM/UIM limits on this commercial auto policy. If the claimant(s) is/are covered as a named insured or as a relative of a named insured under another policy that has lower limits for UM/UIM, than the lower limits shall apply. If the claimant(s) is/are injured by an uninsured or underinsured motorist while in your commercial vehicle, the claimant(s) will be limited to an amount under all policies no greater than the UM/UIM limits on the policy under which the claimant(s) is a named insured, or is a relative of a named insured.

U. No insured shall enter into an agreement that will obligate us to pay, defend and/or indemnify for any unreasonable charges, costs and/or claims. We will not assume any obligations on behalf of the insured outside the scope of the policy without proper endorsement.

**SECTION VII DEFINITIONS**

A. "Accident" means an incident, event, or circumstance which is unexpected and unintended from the standpoint of any Insured.

B. "Advertising Injury" means injury arising out of one or more of the following offenses:

1. Oral or written publications of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services;

2. Oral or written publication of material that violates a persons right of privacy;

3. Misappropriation of advertising ideas or style of doing business; or

4. Infringement of copyright, trademark, patent, title, or slogan.

C. "Agreed Settlement" means a settlement and/or release of liability signed and/or authorized in writing by the Insurer.

D. "Application" means the application for insurance coverage form, and any information provided therewith, completed by or for or on behalf of the Insured requesting insurance coverage from the Insurer

E. "Auto" means a land motorized vehicle, trailer, or semi-trailer designed for travel on public roads, including any attached machinery or equipment. Auto does not include Mobile Equipment.

F. "Bodily Injury" means physical injury to a person's body, including death, but shall exclude:

1. Sickness or disease sustained by any person or death resulting therefore; and

2. Mental or emotional distress, mental anguish, humiliation, embarrassment, mental anxiety, or other emotional, psychological or mental injury, or any physical manifestation thereof.

G. "Claim (s)" means any demand for Damages, including a written demand, a civil action, Suit, or institution of arbitration proceeding.

H. "Claim Expenses" means:

1. All fees, costs, and expenses charged by any lawyer or other service provider designated by the Insurer to represent the Insured; and

2. All other fees, cots, and expenses, including the Insurer's own internal fees, cots, and expenses, or those of an affiliate, resulting from the investigation, adjustment, defense, and appeal of a Claim, as authorized by the Company.

The determination of the Insurer as to the reasonableness of Claim Expenses shall be conclusive on the Insured. All Claim Expenses reduce the available Policy limits.

I. "Damage(s)" means a compensatory sum, monetary judgment, award, or settlement an Insured is or may reasonably become legally obligated to pay as the result of an Accident, but does not include fines or statutory penalties, sanctions, whether imposed by law or otherwise, punitive, exemplary, treble damages, or any multiplied portion of a compensatory award, nor the return or restitution of legal fees, costs, and expenses.

J. "Declarations Page" means the summary of coverage provided in conjunction with this Policy setting forth essential terms that are expressly deemed a part of this Policy.

K. "Endorsement "means any additional coverage or limitation of coverage contained in any attachment or addendum to this Policy. Any Endorsement is an indispensable and indivisible part of the Policy.

L. " Hazardous Materials " means any nuclear, radioactive, toxic, or explosive material, substance, or waste, and any by-products thereof, and the explosive, toxic, and dangerous properties of such material, substance, or waste and any byproducts thereof.

M. " Limit(s) of Liability " means the maximum amount the Insurer will be obligated to pay for an otherwise covered Claim, including payment for Claim Expenses, Damages, or any other sums due under this Policy, the amount of which is set forth on the Declarations Page.

N. " Loss " means direct and accidental Damages.

O. " Mobile Equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

1. Bulldozers, farm machinery, forklifts, and other vehicles designed for use principally off public roads;

2. Vehicles maintained for use solely on or next to premises you own or rent;

3. Vehicles that travel on crawler treads;

4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

a. Power cranes, shovels, loaders diggers, or drills; or

b. Road construction or resurfacing equipment such as graders, scrapers, or rollers.

P. " Personal Injury " means injury, other than Bodily Injury, arising out of one or more of the following offenses;

1. False arrest, detention, or imprisonment;

2. Malicious prosecution, discrimination, or civil rights violations, wrongful or retaliatory discharge;

3. The wrongful eviction or wrongful entry into, or invasion of the right of private occupancy;

4. Oral or written publication of material that slanders or libels a person's or organization's goods, products, or services; or

5. Oral or written material that violates a person's right of privacy.

Q. " Policy" means the Policy issued by the insurer to the Insured including all Endorsements thereto.

R. " Policy Period " means the period of time beginning on the " Effective Date", as stated on the Declarations Page, and ending on the earlier of the initial "Expiration Date", as stated on the Declarations Page, and any effective cancellation date pursuant to the terms of the Policy regardless of any renewal. Any renewal starts a new Policy Period for the renewal terms from the " Effective Date " of such renewal and ending the earlier of any effective cancellation date of the renewal pursuant to the terms of the renewed Policy and the "Expiration Date" set forth on the renewal documents.

S. " Pollutants " means any solid, liquid, gaseous, or thermal irritant or contaminant including, but not limited to, smoke, vapor, soot, fumes, acids, alkalis, chemicals, Hazardous Materials or any other waste, including materials to be recycled, reconditioned, or reclaimed.

T. " Property Damage " means:

1. Physical injury to tangible property, including all resulting Loss of use of that property. All such Loss of use shall be deemed to occur at the time of the physical injury that caused it; or

2. Loss of use of tangible property that is not physically damaged. All such Loss shall be deemed to occur at the time of the Accident that caused it.

U. " Retroactive Date " means any date expressly identified on the Declaration Page as the Retroactive Date. An expressly identified Retroactive Date shall be considered the Effective Date for determining the Policy Period. If no Retroactive Date is expressly identified on the Declaration Page, no coverage is provided for any period of time before the Effective Date.

V. " Self-Insured Retention" or "DEDUCTIBLE" means the amount set forth on the Declaration Page that the Insured will pay for each and every Claim for any combination of Damages and/or Claim Expenses otherwise covered under this Policy. The Insured will pay 100% of the Self-Insured Retention or DEDUCTIBLE before any payment is due pursuant to the terms of this Policy.

W. "Sub-limit" means a limited portion of the aggregate Limit of Liability under the Policy, identified for a specific Accident, person, or type or nature of Loss covered under this Policy. Sub-limits effective under the Policy are identified on the Declaration Page or in Endorsements attached to the Policy. All Sub-limits are expressly subject to and deplete any other applicable Sub-limit(s) and the aggregate Limit of Liability. Sub-limits are within, and not in addition to, the aggregate Limit of Liability. Both Sub-limits and any aggregate Limit of Liability are reduced by Claims Expenses. Specific Sub-limits are further defined as follows:

1. Any "Per Person" Sub-limit limits the portion of the aggregate Limit of Liability the Insurer may be obligated to pay as the result of Bodily Injury and/or Property Damage sustained by any person involved in an otherwise covered Accident to such person, aggregate with all Damages claimed by other person(s) through, or as a result of the Bodily Injury and/or Property Damage sustained by the person involved in the Accident, including but not limited to Claims for Loss of consortium or other Damages by immediate family members, relatives, or third parties.

2. Any "Per Accident" Sub-limit limits the portion of the aggregate Limit of Liability the Insurer may be obligated to pay as the result of Bodily Injury and/or Property Damage claimed by all persons as a result of an Accident. Any Per Accident Sub-limits are expressly subject to any applicable Per Person Sub-limits.

X. "Suit" means any proceeding seeking recovery for Damages for Bodily Injury or Property Damage, including:

1. Any civil action filed in a court of law.

2. An arbitration proceeding to which you must submit or do submit with our consent; or

3. Any other alternative dispute resolution proceeding to which you submit with our consent.

Y. A freight forwarder is a person or entity which holds itself out to the general public to provide transportation of property for compensation and in the ordinary course of its business:

Assembles and consolidates, or provides for assembling and consolidating, shipments and performs break-bulk and distribution operations of the shipments

Assumes responsibility for the transportation from the place of receipt to the place of destination

Uses for any part of the transportation a rail, motor or water carrier subject to the jurisdiction of either FMCSA or the Surface Transportation Board

Z. A Broker is a person or an entity which arranges for the transportation of property by a motor carrier for compensation. A broker does not transport the property and does not assume responsibility for the property

AA. A Motor Carrier transports passengers or property for compensation

BB. Unauthorized Guest Passenger

Any person or persons being transported in a commercial motor vehicle other than a bus or a public livery vehicle.

CC.  Insured's Business

Operations of the named insured as described and defined in the policy declaration pages, endorsements and applications for insurance.

**SECTION VIII SEVERABILITY**

If any provision of this Policy is void or otherwise determined to be unenforceable, all other provisions shall nonetheless be deemed valid.

**SECTION IX MUTUAL AFFIRMATION**

By unqualifiedly accepting this Policy upon receipt, the Insured affirms that all provisions serve to embody and articulate the entire agreement of the parties.

**SECTION X CHOICE OF LAW**

The provisions of this Policy are to be construed in accordance with the Laws of the state in which this Policy contract has been entered.



**BASIC FIRST PARTY BENEFIT ENDORSEMENT**

If the Insured requests or if the state of policy issuance requires BASIC FIRST PARTY BENEFITS, and such coverage is listed on the Declarations Page, and the associated premium is paid for such coverage, subject to all other terms and conditions of the Policy, we will pay first party benefits to eligible claimants as otherwise covered under this Policy.

Limit Of Insurance: Up to Amount Shown in the Declarations or the applicable state minimum required limits.

A.   Coverage
We will pay the Basic First Party Benefit in accordance with the "Act" or applicable law of the state where policy is issued, to or for an "insured" who sustains "bodily injury" caused by an "accident" arising out of the maintenance or use of an "auto".

BENEFITS
Subject to the limit shown in the Schedule or Declarations, the Basic First Party Benefit consists of Medical Expense Benefits. These benefits consist of reasonable and necessary medical expenses incurred for an "insured's":

1.  Care;
2.  Recovery; or
3.  Rehabilitation.

This includes remedial care and treatment rendered in accordance with a recognized religious method of healing.

Medical expenses will be paid if incurred within 18 months from the date of the "accident" causing "bodily injury". If within 18 months from the date of the "accident" causing "bodily injury" it is ascertainable with reasonable medical probability that further expenses may be incurred as a result of the "bodily injury", medical expenses will be paid without limitation as to the time such further expenses are incurred.

B. Who Is An Insured

An Insured is any person and/or entity expressly designated on the Declarations Page or in an Endorsement as an insured who is operating an otherwise covered Auto under this Policy. If the person or entity designated as an Insured is:

1.  An individual, such individual, but only with respect to the conduct of commercial business operations of the named insured and while operating a covered auto.

2.  Any driver listed as an "approved driver" listed in Scheduled Driver Endorsement and which is in compliance with all other policy conditions and provisions, operating a covered Auto with a permission of the Named Insured in the scope of named insured business only.

3. Passenger, unless otherwise excluded by the policy, while occupying insured auto and was injured as a result of an accident involving covered auto within the scope of the named insured's business.

C. Exclusions

We will not pay First Party Benefits for "bodily injury":
1. Sustained by any person injured while intentionally causing or attempting to cause injury to himself, herself, or any other person.
2. Sustained by any person while committing a felony.
3. Sustained by any person while seeking to elude lawful apprehension or arrest by a law enforcement official.
4. Sustained by any person while maintaining or using an "auto" knowingly converted by that person.
5. Sustained by any person who, at the time of the "accident":
a. Is the owner of one or more currently registered "autos" and none of those "autos" is covered by the financial responsibility required by the "Act"; or
b. Is "occupying" an "auto" owned by that person for which the financial responsibility required by the "Act" is not in effect.
6. Sustained by any person maintaining or using an "auto" while located for use as a residence or premises.
7. Sustained by a pedestrian if the "accident" occurred outside of state of issuance of the policy or in a state where First Party Benefits are not required. This exclusion does not apply to:
a. Scheduled and Approved driver while operating covered auto in the scope of the named insured business.
b. Pedestrian or passenger of covered auto in the state where First Party Benefits are required.
8. Sustained by any person while "occupying":
a. A recreational vehicle designed for use off public roads; or
b. A motorcycle, moped or similar type vehicle.
9. Arising directly or indirectly out of:
a. A discharge of a nuclear weapon (even if accidental);
b. War, including undeclared or civil war;
c. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or
d. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.
10. From or as a consequence of the following whether controlled or uncontrolled or however caused:
a. Nuclear reaction;
b. Radiation; or
c. Radioactive contamination.
d. Contagious diseases.

11. Injuries sustained from operating an insured vehicle that is used without insured's permission.

12. Sustained while occupying any auto or trailer while being used as a residence or premises.

D. Limit Of Insurance

1. Regardless of the number of covered "autos", premiums paid, claims made, "autos" involved in the "accident" or insurers providing First Party Benefits, the most we will pay to or for an "insured" as the result of any one "accident" is the limit shown on the Schedule or on the Declarations.

2. Any amount payable under First Party Benefits shall be excess over any sums paid, payable or required to be provided under any workers' compensation law or similar law.

E. Changes In Conditions

The Conditions are changed for First Party Benefits as follows:

1. Transfer Of Rights Of Recovery Against Others To Us does not apply, if prohibited by the laws of the state where policy is issued.
2. The following Conditions are added:

NON-DUPLICATION OF BENEFITS
No person may recover duplicate benefits for the same expenses or loss under this or any other similar automobile coverage including self-insurance.

PRIORITIES OF POLICIES
We will pay First Party Benefits in accordance with the order of priority set forth by the applicable state law. We will not pay if there is another insurer at a higher level of priority. The

"First" category listed below is the highest level of priority and the "Fourth" category listed below is the lowest level of priority. The priority order is:

First The insurer providing benefits to the "insured" as a named insured.

Second The insurer providing benefits to the "insured" as a family member who is not a named insured under another policy providing coverage under the "Act" or applicable state law.

Third The insurer of the "auto" which the "insured" is "occupying" at the time of the "accident".

Fourth The insurer providing benefits on any "auto" involved in the "accident" if the "insured" is:

a. Not "occupying" an "auto"; and
b. Not provided First Party Benefits under any other policy.

If two or more policies have equal priority within the highest applicable number in the priority order:

1. The insurer against whom the claim is first made shall process and pay the claim as if wholly responsible;
2. If we are the insurer against whom the claim is first made, our payment to or for an "insured" will not exceed the applicable limit shown in the Schedule or  Declarations;
3. The insurer thereafter is entitled to recover pro rata contribution from any other insurer for the benefits paid and the costs of processing the claim. If contribution is sought among insurers under the Fourth priority, proration shall be based on the number of involved motor vehicles; and
4. The maximum recovery under all policies shall not exceed the amount payable under the policy with the highest dollar limits of benefits.

F. Additional Definitions
As used in this endorsement:
1. "Auto" means a self-propelled motor vehicle, or trailer required to be registered, operated or designed for use on public roads. However, "auto" does not include a vehicle operated:

a.        By muscular power; or
b.        On rails or tracks.

2. "Occupying" means in, upon, getting in, on, out or off insured vehicle.

## UNINSURED/UNDERINSURED MOTORIST COVERAGE ENDORSEMENT

If the Insured requests or if the state of policy issuance requires Uninsured/Underinsured Motorist Coverage and the insured does not voluntarily waive Uninsured/Underinsured Motorist Coverage, and such coverage is listed on the Declaration Page, and the associated premium is paid for such coverage, subject to all other terms and conditions of the Policy, we will pay Uninsured/Underinsured Motorist Coverage benefits to eligible claimants as otherwise covered under this Policy.

All policy definitions, conditions and exclusions listed in the policy are unchanged by this endorsement, unless specifically stated otherwise under this endorsement.

### INSURING AGREEMENT - UNINSURED MOTORIST COVERAGE

Subject to the Limits of Liability, if you pay the premium for Uninsured Motorist Coverage, we will pay for damages, other than punitive or exemplary damages, which an insured is legally entitled to recover from the owner or operator of an uninsured auto because of bodily injury:
1. Sustained by an insured;
2. Caused by an accident; and
3. Arising out of the ownership, maintenance, or use of an uninsured auto.

### INSURING AGREEMENT - UNDERINSURED MOTORIST COVERAGE

Subject to the Limits of Liability, if you pay the premium for Underinsured Motorist Coverage, we will pay for damages, other than punitive or exemplary damages, which an insured is entitled to recover from the owner or operator of an underinsured auto because of bodily injury:
1. Sustained by an insured;
2. Caused by an accident; and
3. Arising out of the ownership, maintenance, or use of an underinsured auto.

An insured must notify us in writing at least thirty (30) days before entering into any settlement with the owner or operator of an uninsured auto or underinsured auto, or any liability insurer. In order to preserve our right of subrogation and/or recovery, we may elect to pay any sum offered in settlement by, or on behalf of, the owner or operator of an uninsured auto or underinsured auto. If we do this, you agree to assign to us all rights that you have against the owner or operator of the uninsured auto or underinsured auto.

### ADDITIONAL DEFINITIONS

When used in this endorsement, whether in the singular, plural, or possessive:

An Insured is any person designated on the Declaration Page or in an Endorsement as an insured who is operating a covered Auto under this Policy. If the person or entity designated as an Insured is:

I. An individual, such individual, but only with respect to the conduct of commercial business operations of the named insured and while operating a covered auto.
II. Any driver listed as an "approved driver" listed in Scheduled Driver Endorsement and which is in compliance with all other policy conditions and provisions, operating a covered Auto with a permission of the Named Insured in the scope of named insured business only.
III. Passenger, unless otherwise excluded by the policy, while occupying insured auto and was injured as a result of an accident involving covered auto within the scope of the named insured's business.

"Noneconomic loss" means pain and suffering and other non-monetary detriment.
"Non-owned auto" means any auto that is not owned by you or furnished for your regular use and, if the named insured is a natural person, not owned by or furnished for the regular use of the named insured's spouse or relative.
4. "Owned" means the person or organization:
a. holds legal title to the vehicle;
b. has legal possession of the vehicle that is subject to a written security agreement with an original term of six (6) months or more; or
c. has legal possession of the vehicle that is leased to that person under a written agreement for a continuous period of six (6) months or more.

5. "Owner" means the person or organization who, with respect to a vehicle: a. holds legal title to the vehicle;
b. has legal possession of the vehicle that is subject to a written security agreement with an original term of six (6) months or more; or
c. has legal possession of the vehicle that is leased to that person under a written agreement for a continuous period of six (6) months or more.

6. "Underinsured auto" means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident, but the sum of all applicable limits of liability for bodily injury is less than the damages which an insured is entitled to recover from the owner or operator of the motor vehicle because of bodily injury .

An "underinsured auto" does not include any motorized auto or equipment:
a. owned by you or, if the named insured is a natural person, a relative, your employee, volunteer, agent, contractor or subcontractor;
b. operated on rails or crawler treads;
c. designed mainly for use off public roads, while not on public roads;
d. while used as a residence or premises;
e. shown on the Declarations Page of this policy;
f.  not required to be registered as a motor vehicle; or g. that is an uninsured auto.

7. "Uninsured auto" means an auto or trailer of any type:
a. to which no bodily injury liability bond or policy applies at the time of the accident;

b. to which a bodily injury liability bond or policy applies at the time of the accident, but the bonding or insuring company:
a. denies coverage; or
b. is insolvent, or becomes insolvent within six (6) years after the accident occurs; or
c. whose operator or owner cannot be identified and that causes an accident resulting in bodily injury to an insured, provided that the insured, or someone on his or her behalf:
(i) reports the accident to the police or civil authority within twenty-four (24) hours or as soon as practicable after the accident; and
c. notifies us within thirty (30) days, or as soon as practicable there- after, that the insured has a cause of action arising out of such accident for damages against a person or persons whose identity is unascertainable, and sets forth the facts in support thereof .

An "uninsured auto" does not include any motorized auto or equipment:
a. owned by you or, if the named insured is a natural person, a relative, your employee, volunteer, agent, contractor or subcontractor;
b. owned or operated by a self-insurer under any applicable vehicle law, except a self-insurer that is or becomes insolvent;
c. operated on rails or crawler treads;
d. designed mainly for use off public roads, while not on public roads;
e. while being used as a residence or premises;
f. shown on the Declarations Page of this policy;
g. not required to be registered as a motor vehicle; or
h. that is an underinsured auto.

EXCLUSIONS - READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS ENDORSEMENT.

1. Coverage under this endorsement is not provided for bodily injury sustained by any person while using or occupying:
a.  an insured auto without the express or implied permission of you or, if the named insured is a natural person, a relative;
b. a non-owned auto without the express or implied permission of the owner; or
c. an auto or device of any type designed to be operated on the public roads that is owned by, furnished to, or available for the regular use of you or, if the named insured is a natural person, a relative, other than an insured auto or temporary substitute auto.
2. Coverage under this endorsement will not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar laws:
a. workers' compensation law; or
b. disability benefits law.

LIMITS OF LIABILITY

Regardless of the number of premiums paid, or the number of insured autos or trailers shown on the Declarations Page (unless you have selected stacked coverage), or the number of policies issued by us, or the number of vehicles or insureds involved in the accident, or the number of claims or lawsuits arising out of an accident, we will pay no more than the Limit

of Liability shown for Uninsured/Underinsured Motorist Coverage on the Declarations Page.

Nonstacked Limits of Liability

If you have selected nonstacked coverage under this endorsement, the following shall also apply:

If the Declarations Page shows that "combined single limit" or "CSL" applies, the amount shown is the most we will pay for the total of all damages resulting from any one accident. However, without changing this total "each accident" limit of liability, we will comply with any law that requires us to provide any separate limits.

If your Declarations Page shows a split limit:
1. the amount shown for "each person" is the most we will pay for all damages due to bodily injury to one person; and
2. subject to the "each person" limit, the amount shown for "each accident" is the most we will pay for all damages due to bodily injury sustained by two or more persons in any one accident.

The "each person" limit of liability includes the total of all claims made for bodily in- jury to an insured and all claims of others derived from such bodily injury, including, but not limited to, emotional injury or mental anguish resulting from the bodily injury of another or from witnessing the bodily injury to another, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death.

Stacked Limits of Liability

If you have selected stacked coverage under this endorsement, and the named insured is a natural person, the following shall also apply to bodily injury sustained by you or a relative:
1. If you or a relative sustain bodily injury while occupying an insured auto, the limit of liability shall be the limit available under Nonstacked Limits of Liability described above and the limit shown on the Declarations Page multiplied by the number of insured autos that are not involved in the accident.
2. If you or a relative sustain bodily injury while not occupying an insured auto, the limit of liability shall be the limit shown on the Declarations Page multiplied by the number of insured autos.

For purposes of Stacked Limits of Liability, an insured auto does not include any trailer listed on the Declarations Page.

Stacked Limits of Liability shall not increase the limit of liability applicable to any insured other than named insured or as specified in Declaration page and/or Endorsement.

In determining the amount payable under this endorsement, the amount of damages that an insured is entitled to recover for bodily injury shall be reduced by all sums:
1. paid because of bodily injury by or on behalf of any persons or organizations that may be legally responsible; and
2. paid, payable, or which should apply, because of bodily injury under any of the following or similar laws:
a. workers' compensation law; or
b. disability benefits law.

However, if an insured enters into a settlement agreement for an amount less than the sum of the limits of liability under all applicable bodily injury liability bonds and policies, our limit of liability for Underinsured Motorist Coverage shall not exceed the difference between the damages sustained by the insured and the sum of the applicable bodily injury liability limits.

The Limits of Liability under this endorsement shall be reduced by all sums paid under Part I - Liability To Others.

Any payment made to a person under this endorsement shall reduce any amount that the person is entitled to recover under Part I - Liability To Others.

No one will be entitled to duplicate payments for the same elements of damages.

No judgment or settlement for damages arising out of a lawsuit brought against an operator or owner of an uninsured auto or underinsured auto shall be binding against us unless we:
1. received reasonable notice of the filing of the lawsuit resulting in the judgment; and
2. had a reasonable opportunity to protect our interests in the lawsuit.

OTHER INSURANCE

If there is other applicable similar insurance available under more than one policy or provision of coverage, the following priorities of recovery apply:

First The uninsured or underinsured motorist coverage applicable to the auto the insured was occupying at the time of the accident.

Second Any other policy affording uninsured or underinsured motorist coverage to the insured.

If two or more policies have equal priority, the insurer against whom the claim is first made shall process and pay the claim as if wholly responsible. The insurer is thereafter entitled to recover contribution on a pro rata basis from any other insurer for the benefits paid and the costs of processing the claim.

If nonstacked coverage is shown on the Declarations Page and this policy is in the First priority, the maximum recovery under all policies in the First priority shall not exceed the highest applicable limit for any one auto under any one policy in the First priority.

If nonstacked coverage is shown on the Declarations Page and this policy is in the Second priority, the maximum recovery under all policies in the Second priority shall not exceed the highest applicable limit for any one auto under any one policy in the Second priority.

We will not pay for any damages which would duplicate any payment made for damages under other insurance.

ALL OTHER TERMS, LIMITS AND PROVISIONS OF THIS POLICY REMAIN UNCHANGED.



## UNINSURED AND/OR UNDERINSURED MOTORIST PROPERTY DAMAGE COVERAGE ENDORSEMENT

If the Insured requests or if the state of policy issuance requires Uninsured AND/OR Underinsured Motorist Property Damage Coverage and the insured does not voluntarily waive Uninsured AND/OR Underinsured Motorist Property Damage Coverage, and such coverage is listed on the Declaration Page, and the associated premium is paid for such coverage, subject to all other terms and conditions of the Policy, we will pay Uninsured AND/OR Underinsured Motorist Property Damage Coverage benefits to eligible claimants as otherwise covered under this Policy.

All policy definitions, conditions and exclusions listed in the policy are unchanged by this endorsement, unless specifically stated otherwise under this endorsement.

## INSURING AGREEMENT UNINSURED AND/OR UNDERINSURED MOTORIST PROPERTY DAMAGE COVERAGE

Subject to the Limits of Liability, if you pay the premium for Uninsured AND/OR Underinsured Motorist Property Damage Coverage, we will pay for damages, other than punitive or exemplary damages, which an insured is legally entitled to recover from the owner or operator of an uninsured auto because of property damage to a scheduled vehicle at the time of the loss:
1. Sustained by an insured;
2. Caused by an accident; and
3. Arising out of the ownership, maintenance, or use of an uninsured auto.

An insured must notify us in writing at least thirty (30) days before entering into any settlement with the owner or operator of an uninsured auto or underinsured auto, or any liability insurer. In order to preserve our right of subrogation and/or recovery, we may elect to pay any sum offered in settlement by, or on behalf of, the owner or operator of an uninsured auto or underinsured auto. If we do this, you agree to assign to us all rights that you have against the owner or operator of the uninsured auto or underinsured auto.

## ADDITIONAL DEFINITIONS

When used in this endorsement, whether in the singular, plural, or possessive:

An Insured is any person designated on the Declaration Page or in an Endorsement under this Policy as an insured who is operating a covered Auto under this Policy. If the person or entity designated as an Insured is:

1. An individual, such individual, but only with respect to the conduct of commercial business operations of the named insured and while operating a covered auto.
2. Any driver listed as an "approved driver" listed in Scheduled Driver Endorsement and which is in compliance with all other policy conditions and provisions, operating a covered Auto with a permission of the Named Insured in the scope of named insured business only.

3. Accident must be as a result of an occurrence involving covered auto within the scope of the named insured's business.

4. "Owned" means the person or organization:
a. holds legal title to the vehicle;
b. has legal possession of the vehicle that is subject to a written security agreement with an original term of six (6) months or more; or
c. has legal possession of the vehicle that is leased to that person under a written agreement for a continuous period of six (6) months or more.

5. "Owner" means the person or organization who, with respect to a vehicle: a. holds legal title to the vehicle;
b. has legal possession of the vehicle that is subject to a written security agreement with an original term of six (6) months or more; or
c. has legal possession of the vehicle that is leased to that person under a written agreement for a continuous period of six (6) months or more.

6. "Underinsured auto" means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident, but the sum of all applicable limits of liability for bodily injury is less than the damages which an insured is entitled to recover from the owner or operator of the motor vehicle because of bodily injury.

An "Underinsured auto" does not include any motorized auto or equipment:
a. owned by you or, if the named insured is a natural person, a relative, your employee, volunteer, agent, contractor or subcontractor;
b. operated on rails or crawler treads;
c. designed mainly for use off public roads, while not on public roads;
d. while used as a residence or premises;
e. shown on the Declarations Page of this policy;
f.  not required to be registered as a motor vehicle; or g. that is an uninsured auto.

7. "Uninsured auto" means an auto or trailer of any type:
a. to which no property damage liability bond or policy applies at the time of the accident;
b. to which a property damage liability bond or policy applies at the time of the accident, but the bonding or insuring company:
a. denies coverage; or
b. is insolvent, or becomes insolvent within six (6) years after the accident occurs; or
c. whose operator or owner cannot be identified and that causes an accident resulting in property damage to an insured, provided that the insured, or someone on his or her behalf:
(i) reports the accident to the police or civil authority within twenty-four (24) hours or as soon as practicable after the accident; and
c. notifies us within thirty (30) days, or as soon as practicable there- after, that the insured has a cause of action arising out of such accident for damages against a person or persons whose

identity is unascertainable, and sets forth the facts in support thereof .

An "uninsured auto" does not include any motorized auto or equipment:
a. owned by you or, if the named insured is a natural person, a relative, your employee, volunteer, agent, contractor or subcontractor;
b. owned or operated by a self-insurer under any applicable vehicle law, except a self-insurer that is or becomes insolvent;
c. operated on rails or crawler treads;
d. designed mainly for use off public roads, while not on public roads;
e. while being used as a residence or premises;
f. shown on the Declarations Page of this policy;
g. not required to be registered as a motor vehicle; or
h. that is an underinsured auto.

EXCLUSIONS - READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS ENDORSEMENT.

1. Coverage under this endorsement is not provided for property damage:
a.  an insured auto operated without the express or implied permission of the named insured.
b. a scheduled non-owned auto operated without the express or implied permission of the named insured.
c. an auto or device of any type designed to be operated on the public roads that is owned by, furnished to, or available for the regular use of you or, if the named insured is a natural person, a relative, other than an insured auto or temporary substitute auto.
2. Coverage under this endorsement will not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar laws:
a. Governmental immunity
b. Failure to cooperate and/or notify the proper party within the applicable statutes of limitations.

LIMITS OF LIABILITY

Regardless of the number of premiums paid, or the number of insured autos or trailers shown on the Declarations Page (unless you have selected stacked coverage), or the number of policies issued by us, or the number of vehicles or insureds involved in the accident, or the number of claims or lawsuits arising out of an accident, we will pay no more than the Limit of Liability shown for Uninsured AND/OR Underinsured Motorist Property Damage Coverage on the Declarations Page.

The Limits of Liability under this endorsement shall be reduced by all sums paid under Part I - Liability To Others.

Any payment made to a person under this endorsement shall reduce any amount that the person is entitled to recover under Part I - Liability To Others.

No one will be entitled to duplicate payments for the same elements of damages.

No judgment or settlement for damages arising out of a lawsuit brought against an operator or owner of an uninsured auto or underinsured auto shall be binding against us unless we:
1. received reasonable notice of the filing of the lawsuit resulting in the judgment; and
2. had a reasonable opportunity to protect our interests in the lawsuit.

OTHER INSURANCE

We will not pay for any damages which would duplicate any payment(s) made for damages under other insurance.

Uninsured and Underinsured Motorist Property Damage Coverage is not stackable with other policies of the named insured and/or legal owner of the insured vehicle and does not replace collision and/or comprehensive coverage.

ALL OTHER TERMS, LIMITS AND PROVISIONS OF THIS POLICY REMAIN UNCHANGED.



**PUBLIC LIVERY ENDORSEMENT**

This endorsement is applicable to public livery policies and public livery insureds.

All policy definitions, conditions and exclusions listed in the policy are unchanged by this endorsement, unless specifically stated otherwise under this endorsement.

Insurer's liability is capped to the lower of $10,000 or state minimum limits for an occurrence involving ingress or egress of passengers in and out of insured vehicles, with or without insured's assistance. Additional coverages are available for additional premium.

DEFINITIONS:

Public livery includes all classes of business where insured transports persons, including and not limited to:
Taxi, paratransit, limousine, black car service, shuttle services, non-emergency medical transportation, emergency medical transportation, rideshare services, network transportation services and any and all passenger transportation services.

Curb-to-Curb – passenger enters or exits the vehicle, with or without the driver's assistance.

Door-to-Door Service – passenger is assisted from the door of the pickup or drop off location to or from the insured vehicle.

CONDITIONS:

Ingress and Egress of passengers is only covered based on "Curb-to-Curb" service, "Door-to-Door" service is specifically excluded under this policy.

Persons not occupying insured vehicle or are not in process of entering or exiting insured vehicle, are/not covered under this policy.

ALL OTHER TERMS, LIMITS AND PROVISIONS OF THIS POLICY REMAIN UNCHANGED.